IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03151-PAB

(Bankruptcy No. 19-15400 EEB, Chapter 13)

In re:

GLORIA JEAN CANNADY,

    Debtor.

---

JOSUE ZANICAY PEREZ ORTEGA,

    Plaintiff-Appellee,

v.

GLORIA JEAN CANNADY,

    Defendant-Appellant.

---

## ORDER

---

This is an appeal by debtor Gloria Jean Cannady ("debtor") from the September 16, 2020 order [Docket No. 3-1] of the United States Bankruptcy Court for the District of Colorado (the "bankruptcy court") granting plaintiff-appellee's ("plaintiff") motion for summary judgment.[1] The Court's jurisdiction is based on 28 U.S.C. § 158(a).[2] In light of debtor's *pro se* status, the Court will construe debtor's appeal briefs liberally, but will not advocate for her. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[1] The Record consists of two volumes. See Docket Nos. 17-1, 17-2. The Court refers to the Record by reference to "R. [volume number] at [page of record]." Accordingly, a citation to page 144 of volume one is written "R. 1 at 144."

[2] After reviewing the parties' submissions, the Court has determined that oral argument is not necessary to the resolution of this appeal.

I. **BACKGROUND**[3]

Debtor and her former husband acquired residential property located at 662 South Fulton Street, Denver, Colorado 80247 (the "property") by a warranty deed dated July 15, 2005 and recorded August 3, 2005 at Reception No. 200128465 in the records of the City and County of Denver ("Denver"). R. 1 at 144. Cama Plan FBO IRA Account # TO90415 ("Cama Plan") was the holder of a debt that debtor and her former husband owed, which debt was secured by a deed of trust on the property. *Id.*; R. 1 at 145, ¶ 2. In 2012, Cama Plan commenced a foreclosure against the property by recording a Notice of Eviction and Demand with the Public Trustee for Denver. R. 1 at 145, ¶ 3. On November 7, 2013, the Denver District Court entered an order authorizing the foreclosure sale of the property. R. 1 at 145, ¶ 4. Cama Plan purchased the property at the foreclosure sale on December 5, 2013 and the Public Trustee recorded a certificate of purchase reflecting Cama's purchase on December 9, 2013. R. 1 at 145, ¶ 5. The Public Trustee executed and recorded a Public Trustee's Confirmation Deed,

---

[3] The following facts are taken from the bankruptcy court's order granting plaintiff's motion for summary judgment. *See* R. 1 at 144. Because debtor did not file a timely response to the motion, the bankruptcy court deemed certain facts in plaintiff's motion as admitted pursuant to L.B.R. 7056-1(d). *Id.* Debtor does not appeal the bankruptcy court's finding regarding these facts. Rather than timely respond to plaintiff's motion, debtor filed a belated extension request, stating that she thought that she would be reminded of her response deadline. R. 1 at 69–71. The court denied debtor's motion and noted that it had made the briefing schedule clear at an earlier status conference, where the court suggested that debtor write down the deadlines. R. 1 at 73. The court found no excusable neglect in debtor's delay and noted that her statement that she thought she would receive a reminder was not credible because she had complied with other deadlines on her own. R. 1 at 74. In the interest of finality, however, the court considered debtor's various responses to plaintiff's summary judgment motion. *See* R. 1 at 150; Case No. 19-01335 EEB, Docket Nos. 22–25; *see also* R. 1 at 79–129.

on January 3, 2014 at Reception No. 2014000461, in Denver (the "Confirmation Deed").
R. 1 at 145, ¶ 6.  Through the Confirmation Deed, the Public Trustee confirmed that the
foreclosure sale conveyed the property to Cama Plan.  R. 1 at 145, ¶ 7.  Plaintiff
purchased the property from Cama Plan on March 15, 2019 for $410,000.  R. 1 at 145,
¶ 8.   Cama Plan conveyed the property to plaintiff by warranty deed, dated March 15,
2019 and recorded March 20, 2019 at Reception No. 2019032161 in Denver.  R. 1 at
145, ¶ 9.  When he purchased the property, plaintiff did not have actual knowledge of
the debtor or of her claimed interest in the property.  R. 1 at 145, ¶ 10.  After plaintiff
purchased the property, he discovered that the debtor was still occupying it, so plaintiff
commenced litigation in state court to obtain possession.  R. 1 at 145, ¶ 11.

Debtor filed a chapter 13 petition in the bankruptcy court on March 29, 2019.  R.
1 at 145, ¶ 12.   The bankruptcy court dismissed that matter on May 1, 2019.  R. 1 at
145, ¶ 13.  Plaintiff then continued his efforts in state court to obtain possession of the
property.  R. 1 at 145, ¶ 14.  Debtor filed this chapter 13 case (No. 19-15400 EEB) on
June 24, 2019, asserting  a 100% ownership interest in the property and listing plaintiff
as a creditor.  R. 1 at 145, ¶¶ 15–16.  Plaintiff, however, has never loaned debtor any
money or otherwise entered into any agreements with debtor.  R. 1 at 146, ¶ 17.  At the
time of the bankruptcy court's order, debtor remained in possession of the property.  R.
1 at 146, ¶ 18.

Plaintiff sought a declaration  from the bankruptcy court that he is the *bona fide*
purchaser, that he owns the property free and clear of any claims of debtor, and that the
property is not part of debtor's bankruptcy estate.  R. 1 at 144.  Although the bankruptcy
court did not find that plaintiff was a *bona fide* purchaser, R. 1 at 150, the court granted

plaintiff's motion and entered judgment, declaring that the property is not part of debtor's bankruptcy estate and permitting plaintiff to evict debtor from the premises.  R. 1 at 160.

Debtor raises four issues on appeal: (1) "whether the foreclosure proceedings recorded in the County of Denver for the property by HSBC on November 19, 2018 #2018000474, cause a defect in the chain of title to the property"; (2) "whether [p]laintiff is acting in 'good faith' in claiming that the 'Warranty Deed' recorded is a valid document"; (3) whether the Cama Plan IRA account "(that became an interested entity in the property, just 30 days before ex-husband handed Debtor Gloria, partial separation documents), here Debtor cites the 'Third Party Authorization' on record, to demonstrate specifically, reason to conclude that reading the statement in the document and ex-husband signature is evidence of Cornelius Cannady's ownership of 'his account #T090415'?"; (4) whether, by law, "the Tax Violation and the Second Mortgage Loan with FCI and Foreclosure by 1st Mortgage Holder HSBC continue Debtor's legal rights and interest in the property, when fraud is at issue."  Docket No. 11 at 3.  Debtor also notes that her "joint ownership deed of Trust and Warranty Deed were used in 2012" and states, "Debtor title to hidden marital assets not revealed at her divorce affect the title to property and the pension, issues are on Appeal.  Case #CA2305."  *Id.* at 3–4.[4]

---

[4] Debtor cites "Rule 56(d)," *see id.* at 7, presumably referring to Federal Rule of Civil Procedure 56(d), which permits the Court to, among other things, deny a premature summary judgment motion, delay ruling on such a motion, or allow additional time to take discovery or obtain information.  Fed. R. Civ. P. 56(d).  To succeed on a Rule 56(d) motion, "the movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for

## II.  STANDARD OF REVIEW

A party may appeal the "final judgments, orders, and decrees" of a bankruptcy court to either the district court or a bankruptcy appellate panel.  28 U.S.C. §§ 158(a), (c)(1).  A district court reviews the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion.  *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010); *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003) (lifting of automatic stay); *Brasher v. Turner (In re Turner)*, 266 B.R. 491, 494 (B.A.P. 10th Cir. 2001) (excluding an exhibit)*; Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (entering default judgment).

## III.  ANALYSIS

As the bankruptcy court noted, the Colorado public trustee foreclosure statute states, in relevant part, that,

> [u]pon the expiration of all redemption periods allowed to all lienors

---

summary judgment."  *See Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (citation omitted); *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).  However, "relief under Rule 56(d) is not automatic," *Ceverny*, 855 F.3d at 1110 (citation omitted), and is an alternative relief that is waived where a party responds to a motion for summary judgment.  *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) ("The protection afforded by [Rule 56(d)] is an alternative to a response in opposition to summary judgment under [56(c)] and is designed to safeguard against a premature or improvident grant of summary judgment."); *Villa v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 931 F.2d 900 (Table), 1991 WL 70714, at *4 (10th Cir. 1991) ("[Rule 56(d)] may be used only as an alternative to the filing of a brief and answer under [Rule 56(c)].  And when, as here, a party has responded to a summary judgment motion under [Rule 56(c)], that party waives any option it may have had to proceed under [Rule 56(d)].").  Because debtor filed a substantive response to plaintiff's summary judgment motion, the Court finds no error in the bankruptcy court not considering her Rule 56(d) argument to the extent that she raised such an argument.  *See* R. 1 at 69–71.

> entitled to redeem . . . or, if there are no redemption periods, upon the close of the officer's business day eight business days after the sale, title to the property sold shall vest in the holder of the certificate of purchase or in the holder of the last certificate of redemption in the case of redemption. . . . No earlier than ten business days nor later than fifteen business days after both the title vests and the officer has received all statutory fees and costs, the officer shall execute and record a confirmation deed . . . to the holder of the certificate of purchase or, in the case of redemption, to the holder of the last certificate of redemption confirming the transfer of title to the property . . . . Failure of the officer to execute and record such deed or to record the deed within the time specified shall not affect the validity of the deed or the vesting of title.

Colo. Rev. Stat. § 38-38-501(1). Colorado law further provides that "title vests in the holder of the public trustee's certificate of purchase upon the expiration of the period of redemption allowed to the owner and to all junior interest holders entitled to redemption." *See Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue*, 20 P.3d 1212, 1214 (Colo. App. 2000). The public trustee's deed to the holder of the certificate of purchase merely confirms the transfer of title. *Id.*

As the bankruptcy court noted, the legislature amended the foreclosure laws to extend the time before a foreclosure sale during which an owner may cure defaults under the loan and to eliminate the owner's right to redeem title to the property after the sale occurs. *See* R. 1 at 147; *see also Mayotte v. US Bank Nat'l Ass'n*, No. 14-cv-3092-RBJ-CBS, 2016 WL 943781, at *5 n.9 (D. Colo. Mar. 14, 2016) (noting that the owner used to be able to redeem but that the "Colorado General Assembly amended the law to remove that privilege and to instead grant owners a longer period of time to cure"), *aff'd in part, rev'd in part, and remanded sub nom. Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1176 (10th Cir. 2018).

### A. Effect of HSBC's November 9, 2018 Notice of Election and Demand

On appeal, debtor asks, first, whether the foreclosure proceedings initiated by HSBC on November 9, 2018 "caused a defect in the chain of title" and whether this foreclosure prevented Cama Plan from being junior lien holder such that Cama Plan would have lost its "right to full ownership" subject to HSBC, which, plaintiff states, held the senior lien. Docket No. 11 at 8–10. She further asserts that the foreclosure by HSBC "created a cloud" on the title and demonstrates that Cama Plan was not the sole owner of the property, meaning that Cama Plan could not sell the property to plaintiff. *Id.* at 10. In response, plaintiff argues that there is no evidence that debtor was a guarantor to an HSBC loan or that there was a foreclosure proceeding by HSBC. Docket No. 18 at 12. Plaintiff also argues that the "foreclosure here was indisputably conducted by CAMA," *id.* at 16 (citing R. 1 at 51), and notes that the bankruptcy court rejected debtor's argument because plaintiff had failed to provide sufficient evidence to create a genuine issue of material fact that there was a "cloud on the title." *Id.* (citing R. 1 at 151).

When the bankruptcy court considered this issue, it noted that plaintiff had provided only a handwritten document purporting to be a case caption for a 2018 lis pendens action between debtor and HSBC. *See* R. 1 at 151. The court noted that the document contains no information other than the case caption, is not certified or signed by any party, does not contain recording information indicating that it was filed in the real estate records, and has no information about any claims debtor may have asserted against HSBC. *Id.* The court concluded that the document was insufficient to evidence a "cloud on the title." R. 1 at 151–52. The court also stated that HSBC was not the

7

foreclosing lender, meaning that plaintiff apparently purchased the property either subject to HSBC's senior mortgage or paid off HSBC's lien when he purchased the property from Cama Plan.  R. 1 at 152.  Thus, whatever claims debtor may have had against HSBC are irrelevant to the transfer that occurred when Cama Plan, the second mortgage holder, sold the property to plaintiff.  R. 1 at 152.

It is not clear that the bankruptcy court considered the remainder of debtor's purported lis pendens filing; however, the other pages in the record, *see* R. 1 at 188–90, do not provide further detail about whether the notice was filed in the real estate records or the substance of debtor's concerns with HSBC.  *Id.*  It is also not clear that the court considered the two copies of a Notice of Election and Demand for Sale ("notice") signed on November 9, 2018 and listing debtor and her ex-husband as guarantors and HSBC as holder of evidence of debt.  *See* R. 1 at 179, 208.[5]  Nevertheless, while these documents may indicate that HSBC intended to initiate foreclosure proceedings, there is no indication that HSBC actually foreclosed on the property.  *Cf. Igou v. Bank of Am., N.A.*, 459 P.3d 776, 782 (Colo. App. 2020) (considering bank's withdrawal of notice).  Moreover, if HSBC had foreclosed on the property, it would have been HSBC, rather than Cama Plan, that initiated the sale.  However, debtor previously admitted that it was Cama Plan that initiated the foreclosure, that the Denver District Court authorized the foreclosure sale, that Cama Plan purchased the property at the foreclosure sale and was conveyed the property via Confirmation Deed, that plaintiff purchased the property

---

[5] Plaintiff appears not to have considered these documents, as plaintiff states that there is no evidence that debtor was a guarantor on an HSBC loan.  *See* Docket No. 18 at 16.

from Cama Plan, and that Cama Plan conveyed the property to via warranty deed.  R. 1 at 145, ¶¶ 2–9.

As a result, the relevance of the notice that lists HSBC as holder of the debt, which plaintiff bases this argument on, *see* Docket No. 11 at 8–10, seems to be minimal.  First, the fact that the HSBC notice was filed after the Cama Plan notice may indicate that, when Cama Plan foreclosed on the property and took possession at the foreclosure sale, it did so subject to a senior HSBC lien, guaranteed by debtor and secured by an interest in the property.  It may also be the case that debtor stopped servicing the loan sometime after Cama Plan's foreclosure, leading HSBC to file the notice and to begin foreclosure proceedings.  Ultimately, however, as the bankruptcy court noted, none of this is relevant to plaintiff's purchase of the property, which was free and clear of any interest *by debtor* because, regardless of HSBC's interest in the property, debtor lost her interest when she failed to redeem within eight business days of the foreclosure sale to Cama Plan, a failure that resulted in title to the property vesting in Cama Plan.  *See* Colo. Rev. Stat. § 38-38-501 ("Upon the expiration of all redemption periods allowed to all lienors entitled to redeem under part 3 of this article or, if there are no redemption periods, upon the close of the officer's business day eight business days after the sale, title to the property sold shall vest in the holder of the certificate of purchase or in the holder of the last certificate of redemption in the case of redemption.").  The Court finds no error in the bankruptcy court's determination that there was no genuine dispute of material fact concerning the HSBC notice and that debtor's claims against HSBC are irrelevant to the issue of plaintiff's purchase of the property.

### B.  Whether Plaintiff has Proceeded in Good Faith and Whether Warranty Deed is a Valid Document

Second, debtor claims that there is a dispute concerning whether plaintiff acted in good faith in "taking the position to claim the 'Warranty Deed' is a valid document." Docket No. 11 at 11.  Debtor states that "[c]ounty records are not required to prove the validity of any documents it takes, nor can they challenge documents they are suspicious about."  *Id.*  She further states, that the "[c]ounty therefore has no way to prove 'good faith' in what is placed on the record" and that plaintiff has "repeatedly claimed a dispute in the county court using only the 'Warranty Deed.'"  *Id.*  It is not clear whether debtor seeks to appeal the bankruptcy court's finding that there was no evidence of plaintiff's bad faith in the *bona fide* purchaser analysis or whether debtor's argument is that plaintiff's claim that the warranty deed was valid is a separate instance of his bad faith.  Noting debtor's *pro se* status and construing her briefs liberally, the Court considers each possibility in turn.

#### *1.  Whether Plaintiff has Proceeded in Good Faith*

Debtor's "good faith" argument may concern the good faith requirement in the determination of whether plaintiff is a *bona fide* purchaser, as she says that this issue was preserved on appeal in paragraph C on page 6 of the summary judgment order. *See id.* at 13–14.  That section of the order is on "Plaintiff's Request for a Finding of *Bona Fide* Purchaser Status."  R. 1 at 149.

In Colorado, a *bona fide* purchaser is one who pays value for the property, acts in good faith, and lacks notice of any defect in the title to the property.  *Himes v. Schiro*, 711 P.2d 1281 (Colo. App. 1985).  The bankruptcy court found that there were no facts

10

indicating that plaintiff acted other than in good faith and no dispute that plaintiff paid value for the property. R. 1 at 149. Nevertheless, because a reasonable purchaser would have realized that debtor remained in possession after the purchase, the court did not find that plaintiff had no notice of any defect in the title and thus did not conclude that plaintiff was a *bona fide* purchaser. R. 1 at 150. The Court sees no error in this determination. *Davis v. Pursel*, 134 P. 107, 111 (Colo. 1913) (question of whether a party is a *bona fide* purchaser is a question of fact); *Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Servs., Inc.*, 552 P.2d 522, 524 (1976) (same). The Court also notes that the bankruptcy court's finding that there was no evidence of plaintiff acting other than in good faith was irrelevant to the court's *bona fide* purchaser conclusion, as the court ultimately declined to find that plaintiff was a *bona fide* purchaser because of the notice element, a finding consistent with debtor's arguments. *See* R. 1 at 89–91, 116–119, 121. Because the Court finds no error in the bankruptcy court's factual finding on the ultimate *bona fide* purchaser issue – and because a reversal on that issue would have no bearing on that finding – the Court affirms the bankruptcy court.

Separately, debtor appears to argue that plaintiff did not conduct himself in good faith when he broke "into the property when Debtor was away." Docket No. 11 at 11. In response, plaintiff argues that the Court cannot consider this argument because the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. Docket No. 18 at 14–15. The *Rooker-Feldman* doctrine prevents "state-court losers" from seeking a review and rejection of a state-court judgment "rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005); *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012).  "*Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment."  *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (citations omitted).  *Rooker-Feldman* applies only if the state court has made a final determination of the rights of the parties before the federal action is initiated.  *Mann v. Boatright*, 477 F.3d 1140, 1146 (10th Cir. 2007).

Plaintiff's perceives debtor to take issue with the forcible entry and detainer action that plaintiff initiated in Denver District Court because, in her opening brief, debtor states that plaintiff "has repeatedly claimed a dispute in the county court using only the 'Warranty Deed.'"  Docket No. 18 at 18 (quoting Docket No. 11 at 11).  Debtor stated that this was "the issue of Violation of Sanctions by breaking into the property when Debtor was away with his then attorney."  Docket No. 11 at 11.  Plaintiff appears to argue that the *Rooker-Feldman* doctrine bars this Court's review because the Denver District Court's order authorizing the sale of the property to Cama Plan, *see* R. 1 at 52, indicates that this matter was actually decided, which serves as a jurisdictional bar to review.  Docket No. 18 at 18–19.  It is not clear that plaintiff is correct.  The Denver District Court order that plaintiff cites issued on November 7, 2013, *id.*, nearly six years before Cama Plan conveyed the property to plaintiff in a warranty deed.  R. 1 at 145, ¶ 9.  Plaintiff, however, appears to be concerned with the forcible entry and detainer in July 2019.  *See, e.g.*, R. 1 at 87, 89, 117, 119.  Regardless, the November 7 order, titled, "Order: Amended Order Authorizing Sale," states, in full, "[t]he motion/proposed

order attached hereto: SO ORDERED." R. 1 at 52. This order is insufficient for the Court to determine that the *Rooker-Feldman* doctrine applies, as it is not clear precisely what was "actually decided by [the] state court" or what claims were "inextricably intertwined" with the order. *Mo's Express*, 441 F.3d at 1233. Even still, the forcible entry and detainer issue that debtor mentions appears to have been addressed by the bankruptcy court's consideration of whether plaintiff was a *bona fide* purchaser or whether he had inquiry notice that debtor may have had a claim to the property when he found that debtor was still in possession. As explained previously, the Court finds no error in the bankruptcy court's conclusion.

### 2. Whether the Warranty Deed was Valid

Debtor also appears to argue that plaintiff acted in bad faith in arguing that the warranty deed was valid. Debtor states that plaintiff "has not demonstrated any evidence beyond a 'Warranty Deed' for the proof of purchase of real estate," which is evidence of bad faith. Docket No. 11 at 12; *see also id.* at 14. This argument, however, was not raised in the bankruptcy court and may not be raised for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("a federal appellate court does not consider an issue not passed upon below"); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (when a party fails to raise an argument below, the court treats the argument as forfeited); *United States v. Kearn*, 863 F.3d 1299, 1305 (10th Cir. 2017) (when an appellant raises a forfeited argument on appeal, the appellate court will reverse only if the appellant shows plain error in the lower court's ruling).

The undisputed facts indicate that Cama Plan conveyed the property to plaintiff by a warranty deed "dated March 15, 2019 and recorded on March 20, 2019 at

Reception No. 2019032161, in the records of the City and County of Denver." R. 1 at 145, ¶ 9. Debtor did not argue in her response that the warranty deed was not valid. Rather, in response to plaintiff's statement of undisputed fact on this issue, *see* R. 1 at 36, ¶ 12, debtor stated only, "[b]urden has not been met, and therefore no response is necessary." R. 1 at 85, 115. Debtor later stated that "[t]he evidence will show March 15 Warranty Deed, March 20, or April 2 court [plaintiff] states 'no money exchanged yet'." R. 1 at 86, 116. It is not clear what this means, and the Court finds it insufficient to create a genuine issue of material fact. *Phillips v. Calhoun*, 956 F.2d 949, 951 n. 3 (10th Cir. 1992) (noting that unsubstantiated allegations carry no probative weight in summary judgment proceedings). Moreover, as the bankruptcy court noted, the statute is clear that, if there is no redemption by a junior lien holder, title to the property automatically passes to the purchaser eight business days after the foreclosure sale; the deed only serves to "confirm[] that title has vested in the foreclosure sale purchaser." R. 1 at 147 (citing *Telluride*, 20 P.3d at 1214). The Colorado Supreme Court has also made clear that "[b]etween the parties to a transfer the assignment or negotiation of the note itself is all that must be done. It is unnecessary to have any separate document purporting to transfer or assign the mortgage on the real estate, for it will follow the obligation automatically." *Columbus Investments v. Lewis*, 48 P.3d 1222, 1226 n. 4 (Colo. 2002). The Court thus finds that, to the extent debtor did not waive this argument by failing to raise it below, it is without merit and does not create a genuine issue of material fact on the validity of the warranty deed.

### C.  Whether Cama Plan "Demonstrates a Motive to Conspire to Conceal"

Debtor's third argument is difficult to understand. She states,

> The third dispute is whether the IRA CAMA Plan Account #TO90415, ("that became an interested entity in the property, just 30 days before ex-husband handed Debtor Gloria, partial separation documents demonstrates motive to conspire to conceal.)
>
> Here Debtor cites the "Third Party Authorization" on record, demonstrates specifically, reason to conclude that the stated purpose in the document and ex-husband signature is evidence of proof of "his participation/ ownership of account #T090415,"? (Case 19-15400 docket 87 page 31).

Docket No. 11 at 15.  Debtor's argument appears to be that her ex-husband concealed personal property in Cama Plan in order to purchase and sell the property fraudulently.  *Id.*  Debtor also states that she has provided "clear and convincing evidence" that Cama Plan belonged to her ex-husband.  *Id.* at 16.  She mentions a "March 27, 2019 Transfer of Reconveyance" and a "Third Party Authorization," *id.*, but does not include a citation to the first document or explain the significance of either document.  Nor does it appear that these documents were provided to the bankruptcy court.  Nevertheless, while the Court need not consider new evidence submitted on appeal, *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992) (noting that only information before the lower court is considered on appeal), the Third Party Authorization, which appears in debtor's appendix, states only that Cornelius Cannady, III authorized Lisa Manriquez to access Cama Plan.  *See* Docket No. 14-12.  Even if this were sufficient evidence to establish that Cama Plan belonged to debtor's ex-husband, debtor has not demonstrated the relevance of this issue to the precise question in this case.  As the bankruptcy court noted, even if debtor's ex-husband was a "disqualified person" and Cama Plan's 2012 foreclosure was a "prohibited transaction," the consequence of this would not be that the IRA was "void" or lost its ability to transfer property, as debtor argues, but rather that the IRA would lose its tax-exempt status.  R.

15

1 at 156.  The law is clear on this issue.  *See* 26 U.S.C. § 408(e)(2) ("Loss of exemption of account where employee engages in prohibited transaction. – (A) If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year.").  The Court thus rejects debtor's argument.

### D. Whether the "Tax Violation" Continues Debtor's Interest in the Property

Debtor's fourth argument is also difficult to interpret.  She asks whether "the Tax Violation and the Second Mortgage Loan with FCI and Foreclosure by 1st Mortgage Holder HSBC in force at the time Plaintiff seeks to take ownership continue Debtor's legal rights and interest in the property when fraud is at issue."  Docket No. 11 at 17–18.  She also states that the

> Foreclosure proceeding by HSBC was secured by the Deed of Trust which listed Debtor [] as a Guarantor and would have continued the Debtor's rights and interest in the property by default.  All of these transactions would have given Debtor the superior right to the property and Warranty Deed making the Warranty Deed presented by [plaintiff] the junior position in possession matters.

*Id.* at 18.

This argument appears to be a variation of her earlier argument that she still has an ownership interest in the property.  As discussed previously, the effect of HSBC's notice is not clear, yet there is no evidence that HSBC ultimately foreclosed on the property or that debtor's involvement with HSBC is relevant here, as the parties agree that plaintiff purchased the property from Cama Plan, which acquired the property after

a 2012 foreclosure. R. 1 at 145, ¶¶ 3–7. The Court finds no error in the bankruptcy court's findings on this issue.

In the "discussion" section of her brief on this issue, debtor focuses exclusively on her ex-husband's living in the property as being a "disqualifying action" for the IRA. Docket No. 11 at 19–20. The Court previously found this argument unavailing because, even assuming Cama Plan was her ex-husband's IRA and that he engaged in prohibited transactions, the only consequence of such transactions is that the account would have lost its tax-exempt status and would have become an ordinary bank or brokerage account. *See* 26 U.S.C. § 408(e)(2). Such prohibited transactions would not affect Cama Plan's foreclosure on the property or sale to plaintiff. The Court will affirm the bankruptcy court's order on this issue.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Order Granting Plaintiff's Motion for Summary Judgment [Docket No. 17-1 at 144–159] is **AFFIRMED**.

DATED August 23, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge